J-S46014-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAWUD ABDUL-HAKIM | |
| Appellant | No. 1485 EDA 2014 |

Appeal from the Judgment of Sentence November 26, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008191-2011

BEFORE:  MUNDY, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUNDY, J.:          **FILED NOVEMBER 06, 2015**

Appellant, Dawud Abdul-Hakim, appeals from the November 26, 2013, aggregate judgment of sentence of life imprisonment without the possibility of parole, imposed after a jury found him guilty of murder of the second degree, conspiracy, and three counts of robbery.[1]   After careful consideration, we affirm in part and vacate in part.

The trial court summarized the factual history underlying the instant offenses as follows.

> On October 20, 2010, Appellant[] and an unidentified male were invited by co-defendant, Kevin Williams ("Williams") to smoke weed in his car. At approximately 11:20 PM, Williams was driving west on Jackson Street in the City and County of Philadelphia when Appellant suggested they [r]ob

---

[1] 18 Pa.C.S.A. §§ 2502, 903, and 3701, respectively.

three (3) men they saw walking north on Second Street towards Jackson Street. The three (3) men walking north on Second Street were childhood friends Jason Moncrief ("Moncrief"), Andrew Lillie ("Lillie"), and Decedent, Anthony DeMarco Jr. ("DeMarco"). Appellant had a .40 caliber Glock pistol on his person. The unidentified male told Williams to stop the car, said he would be right back, and instructed Williams to stay there. Appellant and the unidentified male exited Williams' car on to the sidewalk ahead of Moncrief, Lillie, and DeMarco, and walked slowly so the three (3) men could catch up. Williams backed his car onto nearby Philip Street where he could see Moncrief, Lillie, DeMarco, Appellant, and the unidentified male. Williams kept his car running in the middle of Philip Street and turned off his headlights.

As the two (2) groups converged, the unidentified male grabbed Moncrief and Appellant grabbed DeMarco; holding DeMarco at gunpoint. The unidentified male and Appellant directed Moncrief, Lillie, and DeMarco to give up their money, whereupon the unidentified male went into the pockets of Moncrief and retrieved $50. Appellant again told DeMarco to "Give it up". DeMarco refused to comply, and was hit in the back of the neck with the gun by Appellant. DeMarco then began to fight Appellant, punching him repeatedly and wrestling Appellant to the ground. During the fight Appellant dropped the gun. The unidentified male picked up the gun, told DeMarco to get off of Appellant, then fired six (6) shots at DeMarco, hitting him four (4) times and hitting Appellant once (1) in the left hip. Lillie and Moncrief subsequently ran south on Second Street, Williams drove west on Jackson Street, while Appellant and the unidentified male ran west on Jackson Street.

DeMarco was shot one (1) time in the left flank; one (1) time in the left hip; one (1) time in the mid back, where the bullet fractured a vertebra, then passed through the thorax, esophagus, heart and sternum; and one (1) time in the upper left

back, injuring his left lung. DeMarco was transported to Thomas Jefferson University Hospital, where he was pronounced dead at 12:07 AM by Dr. Jenoff. An autopsy was performed by Assistant Medical Examiner Dr. Aaron Rosen, who determined the cause of death was multiple gunshot wounds. The manner of death was found to be homicide. At the time of his arrest, Appellant made a detailed statement after receiving his *Miranda*[2] warnings.

Trial Court Opinion, 12/1/14, at 2-4.

Following his arrest, Appellant proceeded to a jury trial on October 2, 2012, consolidated with co-defendant Williams, which resulted in a partial mistrial, as the jury was unable to reach a unanimous verdict in the homicide, conspiracy, and robbery counts.[3] Appellant and Williams were retried commencing November 20, 2013. At the conclusion of the trial on November 26, 2013, the jury returned a verdict, finding Appellant guilty of aforesaid crimes. Appellant was sentenced that same day to an aggregate sentence of life imprisonment without the possibility of parole. Specifically, the trial court imposed a mandatory sentence of life imprisonment without the possibility of parole on the second-degree murder conviction and, pursuant to 42 Pa.C.S.A. § 9712, a mandatory sentence of five to ten years'

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] Appellant was convicted at that trial of firearms not to be possessed without a license, and possessing an instrument of crime, 18 Pa.C.S.A. §§ 6106 and 907, respectively, which are not challenged in this appeal.

incarceration for each of the three robbery counts to run concurrently with the life sentence, and with no further penalty on the remaining charges.

On December 6, 2013, Appellant filed a post-sentence motion including, *inter alia*, a request for a new trial, averring the verdict was against the weight of the evidence.[4] Notice that the motions were denied by operation of law was sent and docketed by the Clerk of Courts on April 9, 2014. Thereafter, Appellant filed a new timely notice of appeal on May 8, 2014. On May 15, 2014, the trial court permitted Appellant's trial counsel to withdraw and appointed new counsel to represent Appellant on appeal.[5]

On appeal, Appellant raises the following issues for our review.

> I. Were the verdicts of guilty as to 2nd degree murder, three counts of robbery, and conspiracy to commit robbery against the weight of the evidence as to the identity of [A]ppellant as one of the perpetrators?
>
> II. Was the sentence imposed by the trial court of 5 to 10 years in prison for the gun point robbery of the victim Anthony DeMarco, Jr. concurrent with the sentence for the second degree murder of Anthony DeMarco, Jr. of life imprison [sic] without parole illegal because these offenses merged for the purpose of sentence?

Appellant's Brief at 2.

---

[4] The day before, Appellant filed a *pro se* notice of appeal from the judgment of sentence. That appeal was quashed by this Court as interlocutory due to the pending post-sentence motion before the trial court. *Per Curiam* Order, 2/24/14, at 1, 3464 EDA 2013.

[5] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant first argues the trial court erred in denying his post-sentence challenge to the weight of the evidence and refusing to grant a new trial. *Id.* at 6. We are mindful of the following standard of review we employ when addressing a challenge to the weight of evidence on appeal.

"A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court." ***Commonwealth v. Diggs***, 949 A.2d 873, 879 (Pa. 2008), *cert. denied*, ***Diggs v. Pennsylvania***, 556 U.S. 1106 (2009).

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
> Appellate review of a weight claim ***is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence***. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.

***Commonwealth v. Best***, 120 A.3d 329, 345 (Pa. Super. 2015) (citations omitted; emphasis in original).

> In reviewing the entire record to determine the propriety of a new trial, an appellate court must first determine whether the trial judge's reasons and factual basis can be supported. Unless there are facts and inferences of record that disclose a palpable abuse of discretion, the trial judge's reasons should prevail. It is not the place of an appellate court to invade the trial judge's discretion any more

than a trial judge may invade the province of a jury, unless both or either have palpably abused their function.

To determine whether a trial court's decision constituted a palpable abuse of discretion, an appellate court must "examine the record and assess the weight of the evidence; *not however, as the trial judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so finding plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury.*" Where the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion.

*Commonwealth v. Clay*, 64 A.3d 1049, 1056-1057 (Pa. 2013) (emphasis in original), *quoting* *Commonwealth v. Brown*, 648 A.2d 1177, 1190 (Pa. 1994). "[T]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact." *Commonwealth v. Shaffer*, 40 A.3d 1250, 1253 (Pa. Super. 2012) (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Commonwealth v. Brown*, 23 A.3d 544, 557-558 (Pa. Super. 2011) (*en banc*) (citations and internal quotation marks omitted).

Instantly, Appellant alleges the evidence is contradictory relative to identifying him as a perpetrator of the robbery leading to the killing of

DeMarco. Appellant's Brief at 6-7. Appellant's argument in its entirety is as follows.

> There were no fingerprints or other physical evidence that connected the defendant to the crimes. None of the three eye-witnesses to the incident were able to identify [Appellant] as one of the perpetrators even though one of the victims who testified stated that he knew [Appellant] from the neighborhood. Finally the alleged confession of [Appellant] is not corroborated by the eye-witness testimony [] or the video of the incident because [Appellant] asserts in his alleged confession that he was wounded in the incident, that is shot in the hip but neither video or the eye-witnesses to the incident say or show that one of the perpetrators were wounded during the incident. The evidence that [Appellant] was one of the perpetrators of these crimes is based on mere conjecture and irreconcilably contradictory evidence. The defendant is entitled a new trial and this Court should order one.

*Id.* We disagree.

The trial court carefully recounted the import of the testimony at trial as follows.

> In the instant case, the Commonwealth presented evidence through testimony of its witnesses, to identify the Appellant was the perpetrator of the crimes of Second[-]Degree Murder and three (3) counts of Robbery. Appellant and the unidentified male intentionally put DeMarco, Lillie, and Moncrief in fear of serious bodily injury while trying to commit a theft, and that theft resulted in [] DeMarco[]'s death. In a statement to police, Appellant said he "grabbed DeMarco and pulled out [his] gun" as the three (3) men passed. Appellant put the gun to DeMarco's chest and said, "Just give it up." Additionally, Appellant was informed that he was being questioned in connection with the death of Anthony DeMarco and Appellant stated that he knew

- 7 -

DeMarco since he was 12 years old from playing basketball with DeMarco in the neighborhood. After establishing that he knew DeMarco, Appellant described how he was involved in the [r]obbery that lead to DeMarco's death.

At trial, [] Lillie [] corroborated Appellant's statement to police when Lillie testified that Appellant grabbed DeMarco at the same time the unidentified male grabbed Moncrief. Lillie further testified that both Appellant and the unidentified male demanded money from the three (3) men while Appellant held DeMarco at gunpoint. [] Moncrief [] testified that the unidentified male took $50 from Moncrief's pockets. Appellant, Lillie and Moncrief saw the unidentified male shoot DeMarco repeatedly, causing DeMarco serious bodily injury that ultimately resulted in DeMarco's death.

Trial Court Opinion, 12/1/14, at 5-6 (citations omitted). The trial court determined the jury's verdict did not shock the conscience of the trial court. *Id.* at 10.

Upon a thorough review of the record, we conclude the trial court's determinations are well supported and Appellant's assertions are baseless. The evidence is not contradictory. While Lillie and Moncrief were unable to identify Appellant because their attackers were wearing hoods drawn up around their faces, their testimony of the events closely tracked and corroborated the version of events related by Appellant in his statement to the police, wherein he fully described his involvement in the robbery. N.T., 11/21/13, at 40-63; at N.T, 11/22/13, at 3-35. Both victims testified they ran when the shooting commenced. N.T., 11/21/13, at 52; N.T, 11/22/13, at 13. Consequently, their failure to notice Appellant had been wounded is

not a contradiction as asserted by Appellant. The jury in this case was free to credit Appellant's confession together with the corroborating evidence from the victims to identify Appellant as a perpetrator of the robbery, conspiracy and homicide. *See Shaffer*, *supra*. We discern no abuse of discretion by the trial court in determining the verdict was not contrary to the weight of the evidence and in refusing to grant Appellant a new trial.

Appellant next argues the trial court erred in failing to merge, for the purposes of sentencing, one of the robbery counts with the second-degree murder count. Appellant's Brief at 7. Additionally, we raise *sua sponte* the legality of the imposition of the mandatory sentences under 42 Pa.C.S.A. § 9712. "A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence. Therefore, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Quintua*, 56 A.3d 399, 400 (Pa. Super. 2012) (citation omitted), *appeal denied*, 70 A.3d 810 (2013). Additionally, sentencing issues "premised upon *Alleyne*[6] … implicate[] the legality of the sentence and cannot be waived on appeal." *Commonwealth v. Newman*, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*), *appeal denied*, 121 A.3d 496 (Pa. 2015). "An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law." *Commonwealth v.*

---

[6] *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

*Poland*, 26 A.3d 518, 523 (Pa. Super. 2011) (citation omitted), *appeal denied*, 37 A.3d 1195 (Pa. 2012).

Our legislature has defined the circumstances under which convictions for separate crimes may merge for the purpose of sentencing.

### § 9765. Merger of sentences

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765.

Our Supreme Court determined that

the plain language of Section 9765 reveals a legislative intent "to preclude the courts of this Commonwealth from merging sentences for two offenses that are based on a single criminal act unless all of the statutory elements of one of the offenses are included in the statutory elements of the other." … [Our Supreme Court] held that when each offense contains an element the other does not, merger is inappropriate.

*Quintua*, *supra* at 401, *quoting* ***Commonwealth v. Baldwin***, 985 A.2d 830, 837 (Pa. 2009).

To determine whether offenses are greater and lesser-included offenses, we compare the elements of the offenses. If the elements of the lesser offense are all included within the elements of the greater offense and the greater offense has at least one additional element, which is different, then the sentences merge. If both crimes require proof of at

- 10 -

least one element that the other does not, then the sentences do not merge.

***Commonwealth v. Johnson***, 874 A.2d 66, 70-71 (Pa. Super. 2005) (citations omitted), *appeal denied*, 899 A.2d 1122 (Pa. 2006).

Instantly, the trial court and the Commonwealth concede that the robbery count pertaining to the robbery of DeMarco should have merged for sentencing with the second-degree murder count, because it arose from the same event and all the elements of the robbery offense are included in the second-degree murder offense. Trial Court Opinion, 12/1/14, at 11; Commonwealth's Brief at 10. We agree, and accordingly we must vacate the concurrent five to ten year sentence attributable to the charge based on the robbery of DeMarco. ***See Poland***, ***super***.

With respect to the remaining robbery counts, the trial court imposed the mandatory sentence on each robbery charge pursuant to 42 Pa.C.S.A. § 9712.[7] This sentencing provision has recently been held to be unconstitutional in its entirety as violative of the ruling in ***Alleyene***, in that facts that increase mandatory minimum sentences must be submitted to the

_____

[7] Section 9712 provides for the imposition of a five-year mandatory minimum sentence of incarceration for any person convicted of a crime of violence, which includes robbery under 18 Pa.C.S.A. § 3502(a)(1), if it is shown by a preponderance of the evidence at sentencing that "the person visibly possessed a firearm or a replica of a firearm, whether or not the firearm or replica was loaded or functional, that placed the victim in reasonable fear of death or serious bodily injury, during the commission of the offense." 42 Pa.C.S.A. § 9712.

finder of fact and must be found beyond a reasonable doubt. *Commonwealth v. Valentine*, 101 A.3d 801, 811-812 (Pa. Super. 2014).

In *Valentine*, this Court determined that the mandatory minimum sentences imposed pursuant to Sections 9712 and 9713 were unconstitutional even if the facts that trigger the mandatory minimum sentence are submitted to the fact-finder and found beyond a reasonable doubt, instead of by the trial court by a preponderance of evidence at sentencing. *Id.* at 811-812. We are therefore constrained to vacate the sentences for the remaining two robbery convictions in this case as well.

As noted by the Commonwealth and the trial court, our vacating this portion of the sentence does not disrupt the overall sentencing scheme, of life imprisonment without possibility of parole.[8] Consequently, we do not vacate the remainder of the sentence and need not remand the case. "If our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan. By contrast, if our decision does not alter the overall scheme, there is no need for a remand." *Commonwealth v. Thur*, 906 A.2d 552, 569-570 (Pa. Super. 2006), *appeal denied*, 949 A.2d 687 (Pa. 2008).

---

[8] We note that the trial court initially sentenced Appellant only on the second-degree murder count with no additional penalty on any of the other charges including the three robbery counts. N.T., 11/26/14, at 31. The concurrent robbery sentences were added only after the Assistant District Attorney reminded the trial court that it lacked discretion not to impose the mandatory sentence under Section 9712, but suggested they run concurrently with the life sentence. *Id.* at 33.

Based on the foregoing, we conclude the trial court did not abuse its discretion in refusing to grant Appellant a new trial based on the verdict being against the weight of the evidence. We are nevertheless constrained to vacate the illegal portions of the trial court's sentence pertaining to the three robbery counts. Inasmuch as our vacating the illegal portions of the sentence does not disrupt the trial court's overall sentencing scheme, we need not disturb the balance of the sentence or remand this case.

Judgment of sentence affirmed in part and vacated in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2015